United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDERICK JACKSON, ASHLEY NICOLE JACKSON, a minor, BRIANA FREDRANIQUE ANNETTE JACKSON, a minor, and SHAWN YVETTE MARTIN,<br><br>    Plaintiffs,<br><br>  v.<br><br>CITY OF PITTSBURG, AARON L. BAKER, individually and in his official capacity as Chief of Police of the City of Pittsburg Police Department, G. LOMBARDI, individually and as an officer of the City of Pittsburg Police Department (Badge # 275), C. SMITH, individually and as an officer of the City of Pittsburg Police Department (Badge # 285), P. DUMPA, individually and as an officer of the City of Pittsburg Police Department (Bade # 291), WILLIAM BLAKE HATCHER, individually and as an officer of the City of Pittsburg Police Department (Badge # 274), and DOES 1–100, inclusive,<br><br>    Defendants. | No. C 09-01016 WHA<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR SANCTIONS** |

**INTRODUCTION**

In this civil rights action, plaintiffs move for monetary sanctions pursuant to Rule 11. For the reasons stated below, plaintiffs' motion is **DENIED**.

**STATEMENT**

Plaintiffs' complaint arises out of a police action that took place at the adjacent residences of plaintiffs Frederick Jackson and Shawn Yvette Martin. A party was held at the residences,

and plaintiffs Ashley Jackson and Briana Jackson, both minors and daughters of plaintiff Mr. Jackson, were present. An altercation between partygoers broke out. One partygoer was knocked unconscious, and a neighborhood visitor called the police. A police dispatcher from the City of Pittsburg Police Department informed the responding officers that there was a "man down" and that a shirtless African-American male at the scene might have been in possession of a knife.

Two officers arrived at the scene with weapons drawn. Five more officers arrived shortly thereafter. At least nine people were in the vicinity of the Jackson and Martin residences at the time of the officers' arrival, and it is uncontroverted that Mr. Jackson was the only shirtless African-American male on the scene. Plaintiffs allege that one of the officers used harsh language directed at Ashley Jackson. Mr. Jackson is said to have reacted with harsh language, and officers responded by attempting to frisk and handcuff him. At that point, the officers contend that Mr. Jackson battered one of the officers while Mr. Jackson was being handcuffed. Mr. Jackson said that he might have inadvertently nudged the officer. It is undisputed that three officers fired their tasers at Mr. Jackson and that he fell to the ground. Six seconds later, one of the officers fired his taser at Mr. Jackson a second time.

The officers proceeded to order the crowd of people present to be calm and quiet. Ms. Martin and Ashley Jackson, according to the testimony of many on the scene, did not heed the officers' order. Ms. Martin was handcuffed and placed into a police car, and plaintiffs allege that Ashley Jackson and Mr. Jackson were slammed into police cars by the officers before being restrained. Mr. Jackson was arrested and Ashley Jackson was handcuffed and detained.

Plaintiffs' first amended complaint, the extant pleading, contains twelve claims against five of the responding police officers, the chief of police of the City of Pittsburg Police Department, and the City of Pittsburg. Defendants moved for summary judgment which was granted in part and denied in part in an order filed on June 8, 2010. Nine of plaintiffs' twelve claims survived, including battery and false imprisonment. Prior to the June 8 order, but after defendants had moved for summary judgment, plaintiffs noticed the instant motion for monetary sanctions in the form of attorney's fees pursuant to Rule 11.

Plaintiffs' motion contends that defendants' motion for summary judgement was (1) not warranted by existing law, (2) presented only to harass plaintiffs, and (3) resulted in unnecessary delay and an increase in the costs of litigation. Plaintiffs suggest that defendants sought summary judgment knowing that their motion would fail, because they willfully ignored the existence of genuine issues of material fact and premised the motion on misleading factual and legal statements. Additionally, Attorney Lagos wrote a letter and an email to defendants' counsel, prior to filing the instant motion, specifically warning that plaintiffs would move for sanctions under Rule 11 if any attempt to move for summary judgment based on qualified immunity was made by defendants.

Defendants included qualified immunity arguments in their motion, and Attorney Lagos proceeded to write to counsel for defendants again, this time to offer to drop the Rule 11 motion if defendants could provide a reasonable basis for including such an argument in their motion. Counsel for defendants replied, noting that qualified immunity is granted where the proof considered during summary judgment suggests error on the part of a police officer, and is not dependant on whether or not the facts surrounding the error are disputed. Plaintiffs decided not to withdraw the instant motion. Defendants then filed an opposition, stating that their motion for summary judgment was brought in good faith, and that Rule 11 sanctions are not warranted in this matter.

**ANALYSIS**

Rule 11 sanctions are not warranted in this matter. Defendants made good faith arguments based on a reasonable inquiry into the law and facts asserted in support of their motion for summary judgment. Plaintiffs allege that defendants have violated Rule 11 by filing a motion for summary judgment with an improper purpose, namely to drive up the cost of litigation in this proceeding. Plaintiffs suggest that defendants knew of genuine issues of material fact that existed with respect to plaintiffs' claims, and that defendants improperly sought dismissal via summary judgment despite that knowledge. The existence of genuine issues of material fact, plaintiffs contend, rendered defendants' motion frivolous and "doomed to fail" because: (1) defendants knew of the factual disputes prior to moving for summary judgment; (2) a reasonable inquiry into

3

the facts and law should have indicated to defendants that a motion for summary judgement founded upon qualified immunity would be fruitless; and (3) defendants should have known that their motion would fail in this proceeding, since they made a similar motion for summary judgment that failed in another suit to which they were a party.

### 1. DEFENDANTS MOVED FOR SUMMARY JUDGMENT DESPITE FACTUAL DISPUTES.

Plaintiffs broadly state that any reasonable inquiry into the facts would have revealed to defendants that they could not prevail on a motion for summary judgment, and that the lack of such an inquiry constitutes a violation of Rule 11. The June 8 order, however, revealed that defendants' inquiry into the facts was indeed reasonable, and granted defendants' motion, in part. For example, plaintiff Briana Jackson's battery and civil rights claims were dismissed because plaintiffs provided no evidence that she was ever touched by defendant police officers. Similarly, plaintiff Martin's claim of false imprisonment was dismissed because Ms. Martin's deposition showed that she did not contest her detention by defendant officers. Defendants made reasonable inquiries into the facts before moving for summary judgment.

### 2. DEFENDANTS' QUALIFIED IMMUNITY ARGUMENT.

Defendants' inclusion of qualified immunity arguments in their motion for summary judgment did not violate Rule 11. A violation of Rule 11 occurs when a person files a paper without first making a reasonable or competent inquiry into the facts or law asserted in the paper. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830–31 (9th Cir. 1986) (*overruled on other grounds by Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)). In their motion for summary judgment, defendants relied on a bevy of relevant case law and statutory authority to substantiate their qualified immunity arguments — a strong showing that defendants' counsel made a "reasonable inquiry" into the facts and law before moving for summary judgment.

True, defendants' qualified immunity arguments were rejected in the June 8 order. That order distinguished the case law supporting defendants' motion, *Mattos v. Agarano*, 590 F.3d 1082 (9th Cir. 2010), on several grounds, including that in *Mattos*, only one taser was fired at the plaintiff. Here, Mr. Jackson was shot with a taser four times and the June 8 order found that a reasonable jury could find that such taser use was excessive, despite an assertion of

4

qualified immunity. A similar finding was made with respect to plaintiff Ashley Jackson's excessive force claim. A rejection of defendants' qualified immunity argument, however, cannot be equated with a finding that the argument was brought in bad faith or that it was made without a reasonable inquiry into the facts or law.

### 3. DEFENDANTS HAVE MADE A SIMILARLY FLAWED MOTION IN ANOTHER SUIT.

Plaintiffs' final argument in support of sanctions is founded upon the fact that defendants made arguments similar to those made here in a partially unsuccessful motion for summary judgement in another suit, *Fischer v. City of Pittsburg*, 2008 WL 4369986 (N.D. Cal. Sept. 24, 2008). The fact pattern there was too different to support this argument and this argument is rejected.[*]

## CONCLUSION

For the reasons stated above, plaintiffs' motion for sanctions under Rule 11 is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 8, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[*] In *Fischer*, the plaintiff evaded a routine traffic stop in a motor vehicle, and attempted to hide from the defendant police officer who pursued and eventually apprehended him. *Id.* at *5. The plaintiff alleged that he was beaten and kicked repeatedly before being handcuffed and put into a police car that resulted in severe facial wounds that lasted for more than ten days. *Id.* at *2. The present proceeding is dependant on an entirely distinct set of facts. Here, defendant police officers were dispatched to a residence where they were told that there was a "man down" and another man who may have a knife. Plaintiffs do not allege that they were punched or kicked. The plaintiff in *Fischer* was not subject to being tased once, let alone four times.